UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VIRGINIA M. ELLIOTT, DEBORAH
KNOBLAUCH, JON FRANCIS, and
LAURA RODGERS, individually and on behalf
of all others similarly situated,

                                        Plaintiffs,


          v.                                             3:10-cv-934


LEATHERSTOCKING CORPORATION,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

          Plaintiffs Virginia Elliott, Deborah Knoblauch, Jon Francis, and Laura Rodgers

("Plaintiffs") commenced the instant action against Defendant Leatherstocking Corporation

asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206 and 207; the

New York State Minimum Wage Act, New York Labor Law Art. 19; Section 196-d of the New

York Labor Law; and claims for the wrongful interference with prospective economic

advantage; conversion; negligence; and breach of contract.  Presently before the Court is

Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## I.      FACTS

          Because the instant matter is before the Court on a motion under Rule 12(c), the

following facts are taken from the Complaint and presumed to be true.

Defendant owns and operates the Otesaga Hotel and Resort in Cooperstown, New York.  Defendant employed Plaintiffs Virginia Elliott and Deborah Knoblauch as room attendants, Plaintiff Jon Francis as a dining room busser and banquet server, and Plaintiff Laura Rodgers as a dining room food server and banquet server.  The basic premises of the complaint are that:

(1) Defendant did not pay to Plaintiffs the correct amount of funds it collected from its guests as a mandatory service charge in lieu of voluntary gratuities;

(2) Defendant wrongfully included the collected service charges as part of the wages of the Plaintiff room attendants and did not inform them that the service charges were included in the calculation of their hourly rate;

(3) Defendant did not advise the room attendants that it was including service charges as part of their hourly wage rate and, therefore, their base wages should be deemed to be the full amount paid by Defendant and Defendant should be found not to have paid the service charges to the room attendants; and

(4) based on the foregoing, Defendant did not pay proper overtime or minimum wages to its personnel, did not comply with Labor Law § 196-d, converted Plaintiffs' monies, interfered with Plaintiffs' prospective business relations, and breached the contract between Defendant and Defendant's customers.

The specific allegations are as follows.

Defendant charges all guests paying for lodging a daily service charge.  Defendant represented to its guests that these service charges are "distributed to the room attendant and the dining room personnel for services rendered."  Am. Compl. at ¶ 21.  Defendant also charges its dining room guests who do not stay overnight at the hotel a service charge based

on a percentage of the customers' food or beverage charges.  Defendant represented to its

dining room only customers that the service charges were in lieu of tips the customers might

otherwise leave.  Id.  Plaintiffs claim that Defendant did not pay the collected service charges

or:

> failed and refused to pay such monies, or the full amount of such monies so
> collected, to the class members providing such services and instead kept all or a
> portion of such monies for its own benefit, such benefit to the defendant including
> paying such monies or a portion of such monies to persons employed by the
> defendant who were not members of the [Plaintiff] class or not members of the
> [Plaintiff] class providing the services for which such charges were collected and by
> doing so reducing the costs the defendant would otherwise have to pay itself to
> compensate such persons, the defendant also concealing such actions from its
> customers, the [Plaintiff] class members and the general public. [sic] failed to pay
> the full amount of those monies to them.

Id. at ¶ 23.[1]

It is further claimed that Defendant represented to its room attendants that they

would be paid a specific hourly rate, but did not disclose that a portion of the hourly rate was

comprised of monies collected from the service charges.  In this regard, the Complaint

alleges that:

> Defendant also represented to [Plaintiffs] . . . that they were receiving a basic
> hourly wage, paid by the defendant, of $9.00 to $11.00 an hour or a similar amount
> and intentionally did not disclose . . . that defendant had determining [sic] it was
> paying most of that wage from amounts it collected from the service charges it
> imposed on its customers, defendant secretly determining that it was only paying
> the New York State "tip credit" hourly minimum wage to such room attendant
> employees from funds that it designated as not being collected from customer
> service charges, such non-disclosure by the defendant being consistently
> maintained until sometime in 2009 or 2010 even when such room attendants prior
> to that date had repeatedly inquired about the disposition of the service charges
> paid by lodging customers, the defendant responding to all such inquiries without
> actually disclosing to such room attendants that the defendant considered all such

---

[1] Plaintiffs repeatedly refer to a "class" because it appears to be their intention to ultimately
move forward as a class action.  No such class action applications have yet been made.

service charge payments to have already been received by such room attendants
in the basic hourly wage paid by the defendant to such class members.

Am. Compl. at ¶ 24.[2]

Plaintiffs claim that Defendant's actions violate the Federal and State minimum
wage and overtime laws (First and Second Causes of Action), violate N.Y. Labor Law § 196-
d (Third Cause of Action), and constitute the wrongful interference with prospective economic
advantage (Fourth Cause of Action), Conversion (Fifth Cause of Action), Negligence (Sixth
Cause of Action), and Breach of Contract (Seventh Cause of Action).  Presently before the
Court is Defendant's motion pursuant to Fed. R. Civ. P. 12 seeking to dismiss the Third,
Fourth, Fifth, Sixth, and Seventh Causes of Action.

## II.     STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement
of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair
notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v.
Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct.
99 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
detailed factual allegations . . .  a plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation
of the elements of a cause of action will not do."  Id. at 1964-65.  "Factual allegations must
be enough to raise a right to relief above the speculative level. . . on the assumption that all

---

[2] Ordinarily, workers are entitled to receive the statutorily set minimum wage (currently $7.25 per hour in New York State).  An employer may take a credit toward the basic minimum hourly rate if a service employee or food service worker receives enough tips.  In other words, when an employee receives tips that are expected to bring the employee's hourly rate to (or in excess of) the minimum wage rate, the employer may pay the employee at a rate lower than $7.25 minimum wage rate.  This is known as the "tip credit."

the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.  "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949.  Legal conclusions must be supported by factual allegations.  Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

    With this standard in the mind, the Court will address the pending motion to dismiss.  In reviewing the pending motion, the Court has disregarded all materials submitted by the parties outside of the pleadings.  Fed. R. Civ. P. 12(d).

III.     DISCUSSION[3]

    a.     <u>New York Labor Law § 196-d</u>

Plaintiffs claim that Defendant violated New York Labor Law § 196-d because it failed to properly remit monies collected as mandatory service charges.  Defendant moves to dismiss this claim on the ground that the Complaint fails to allege that Defendant improperly retained any part of a gratuity intended for an employee.  The basis for Defendant's argument is that the Complaint fails to allege that the service charges were retained by management.  Defendant contends that the Complaint alleges that the service charges were distributed among employees, including persons who worked in positions other than as room attendants, food servers, food bussers, or banquet servers, and that distributing the service charges in this manner is not a violation of § 196-d.  Defendant further argues that the Complaint concedes that it paid the service charges to its employees, although Defendant may have included those charges (or some of them) as part of its employees' wages.

New York Labor Law § 196-d prohibits an "employer or his agent or an officer or agent of any corporation" from "retain[ing] any part of a gratuity or of any charge purported to be a gratuity to an employee."  The term "agent" is defined to include, but not be limited to, "a manager, superintendent, foreman, supervisor or any other person employed acting in such capacity."  N.Y. Labor Law § 2(8-a).  An "agent" is someone who has a sufficient level of broad managerial authority, operational control, or power to control employees.  <u>In re Starbucks Employee Gratuity Litigation</u>, 264 F.R.D. 67, 72 (S.D.N.Y. 2009).  Such authority

---

    [3]  Review of Plaintiff's Amended Complaint is complicated by its format.  Rather than consisting of short sentences limited to a single idea, <u>see</u> Fed. R. Civ. P. 8, the Complaint consists of lengthy, paragraph long, run-on sentences that often span more than ten lines and contain alternative pleadings within those sentences.

may be found to exist where an individual can suspend or terminate an employee.  Id.  One

court distilled the case law in this regard as follows:

> [P]ersons without the capacity to hire, fire or discipline other employees, even
> restaurant staff characterized as senior floor captains and accorded supervisory
> responsibilities, are not agents for the purposes of Section 196-d, presumably
> because persons without authority over hiring, firing and other incidents of the
> employment relationship are not exercising powers relevant to the creation or
> maintenance of the employment relationship.

Id.; see also Garcia v. La Revise Assocs., LLC, 2011 WL 135009, at *5 (S.D.N.Y. 2011)

(Noting that there must be an examination of the totality of the circumstances to determine

whether an individual possessed the power to supervise and control the workers in question,

and stating that "[w]hile no single factor is dispositive in this analysis, courts consider whether

the alleged employer had the power to hire and fire employees, supervise and control their

work schedules or conditions of employment, determine their rates and methods of payment,

or maintain their employment records."); Ayres v. 127 Restaurant Corp., 12 F. Supp.2d 305,

307-08 (S.D.N.Y. 1998).

   The Third Cause of Action alleges that Defendant collected the service charges,

the service charges constituted gratuities within the meaning of § 196-d, and Defendant

"fail[ed] to properly distribute 100% of [the] service charge[s] to the plaintiff class members

providing the services for which the charge was imposed."  Compl. at ¶ 33.[4]  It is Plaintiffs'

---

[4] Elsewhere in the Amended Complaint Plaintiffs allege that Defendant retained the collected
service charges.  The Court does not consider the allegations outside the Third Cause of Action because
they were not incorporated therein.  See Fed. R. Civ. P. 10(c) ("A statement in a pleading may be
adopted by reference elsewhere in the same pleading. . . ."); see also Arce v. Walker, 139 F.3d 329,
336 n.7 (2d Cir. 1998); Linares v. Richards, 2009 WL 2386083, at *4 n.3 (E.D.N.Y. 2009) ("adoption
by reference must be explicit; absent an explicit reference the Court is barred from considering
plaintiff's unincorporated factual allegations. . . .") (internal quotation and citations omitted).  In some
instance, (e.g. the Second, Fourth, Fifth, Seventh, Sixth Cause of action), Plaintiffs explicitly
incorporated all prior allegations.  Plaintiffs did not do so with respect to the First and Third Causes of
(continued...)

contention that Defendant "collected a service charge . . .and failed to pay such service charge to the plaintiffs, **the persons solely entitled to the same under § 196-d**." Pl. Mem. of Law at 6 (emphasis added). In other words, the Complaint asserts that Defendant did not limit distribution of the service charges to the persons who actually provided the service for which the charge allegedly was imposed.[5] The problem with this assertion is that Defendant lawfully may distribute the service charge to persons other than Plaintiffs or persons within their proposed class.[6]

"[T]ip pooling is not per se illegal . . . ." Ayres, 12 F. Supp.2d at 307; see also Garcia, 2011 WL 135009, at *5; 29 U.S.C. § 203(m); Alford v. Harolds Club, 99 Nev. 670 (1983). New York Department of Labor regulations effective January 1, 2011 expressly permit tip pooling (also known as tip sharing). See 12 N.Y.C.R.R. 146-2.15.[7] For there to be

_____

[4](...continued)
Action, thereby suggesting that the omission was intentional.

[5] The way the Court reads the Complaint, Plaintiffs complain, for example, that a room attendant may not receive a portion of the service charges imposed on dining only customers. See Am. Compl. at ¶ 34.

[6] In their memorandum of law, Plaintiffs contend that the proposed class consists of all persons employed in room attendant and/or dining service positions, including beverage servers, bartenders, banquet servers, bus persons, catering food servers, and waiters and waitresses, Pl. Mem. of Law at 2 n.1, or all persons who were entitled to receive the service charges at issue in this case. Id. at 4 n. 2. The problems with these assertions are that: (1) this matter is not yet a class action and, thus, there is no class; (2) the named Plaintiffs only represent employees in the areas of room attendants, dining room bussers, banquet servers, and dining room food servers; (3) the class allegations are not incorporated into the Third Cause of Action, see n.3 supra; and (4) as will be discussed, there may be other persons entitled to receive a share of gratuities that are not included within Plaintiff's defined class (e.g. bellhops, captains, and hosts).

[7] Pursuant to 12 N.Y.C.R.R. § 146-2.16(b):

An employer may require food service workers to participate in a tip pool. . . . Only food service workers may receive distributions from the tip pool.

Although this regulation prohibits the sharing of food service tips with non food service workers, the
(continued...)

a violation of § 196-d, the employer must retain a portion of the gratuities by keeping them as profit, using those monies for operating costs, or distributing those monies to employees who are not otherwise eligible to receive gratuities.  See N.Y. Labor Law § 196-d; see also Reyes v. Altamarea Group, LLC, 2011 WL 280799, at *3 (S.D.N.Y. 2011) (finding that a complaint stated a claim for relief where it alleged that the defendant unlawfully distributed gratuities to workers who do not customarily and regularly receive tips, including, but not limited to, managers and the head sommelier.); Fowler v. Scores Holding Co., Inc., 677 F. Supp.2d 673, 684 (S.D.N.Y. 2009) (finding that a complaint states a claim where it alleges that supervisors and managers took a portion of the gratuities for themselves and the plaintiff was otherwise required to share gratuities with employees other than waiters, servers, busboys, or similar employees); Lujan v. Cabana Management, Inc., 2010 WL 5391462, at *4 (E.D.N.Y. 2010); Alford, 99 Nev. 670 (applying Nevada law).  Section 196-d does not address who within the class of eligible employees may receive pooled gratuities.  Section 196-d similarly does not speak to the manner in which an employer must distribute or allocate gratuities among eligible employees.[8][9]  See Alderman v. 21 Club, Inc., 733 F.

---

[7](...continued)
rule was not in effect during the times relevant to the instant litigation.  Prior to the effective date of this regulation, tip pooling was an acceptable practice.

[8] The minimum wage laws provide some restrictions on the authority of employers to distribute, or redistribute, pooled gratuities because the employer must ensure that each employee does not, after consideration of gratuities, make less than the statutory minimum wage rate.  Any such restrictions, however, are found in the mandate of the minimum wage laws; not § 196-d.

[9] Plaintiffs contend that Defendant represented to its customers that the mandatory service charges would only be paid to certain specified categories of employees (e.g. room attendants and/or food service workers).  As is pertinent to the § 196-d claim, Defendant's representations to its customers are only relevant for purposes of determining whether the mandatory service charge qualifies as a gratuity; not how any gratuity must be distributed.  Prior to the New York Court of Appeal's decision in Samiento v. World Yacht Inc., 10 N.Y.3d 70 (2008), mandatory service charges were held
(continued...)

Supp.2d 461, 468 (S.D.N.Y. 2010) ("Section 196-d guarantees to the employees whatever

has been charged to provide gratuities, without reference to a specific percentage."); Hartnett

v. Wade-Mark Eleven, Inc., 156 A.D.2d 559 (2d Dep't 1989) (affirming the decision of the

Industrial Board of Appeals that revoked the Commissioner of Labor's determination that a

policy requiring waitresses to turn over 2% of their gross sales receipts for each shift and

placed them in a tip pool to be distributed to other employees violated § 196-d where, among

other things, there was no evidence the employer retained any of the money in the tip pool

for itself).  Thus, it would not be unlawful under § 196-d, for example, for Defendant to have

collected mandatory service charges, pooled those monies, and then distributed them among

bussers, food servers, room attendants, bartenders, bellhops, captains who provide direct

food service to customers, hosts who greet and seat guests, or other persons who principally

and regularly provide service to patrons.[10]  See Alford, 99 Nev. 670 (holding that, under a

---

[9](...continued)
not to be gratuities subject to § 196-d.  See Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 328 (S.D.N.Y. 2010) (explaining that "[i]n 1995, [t]he New York State Department of Labor . . . issued an Inter-Office Memorandum setting forth its policy that service charges would not be considered gratuities under § 196-d" and that two subsequent cases held that mandatory service charges could not be considered gratuities under the statute.) (citing Bynog v. Cipriani Group, 298 A.D.2d 164, 748 N.Y.S.2d 9 (N.Y. App. Div. 2002), aff'd as mod., 1 N.Y.3d 193, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003); and Lu v. Jing Fong Restaurant, Inc., 503 F. Supp.2d 706, 710 (S.D.N.Y.2007)).  In Samiento, the Court of Appeals held that

> the standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer as this standard is consistent with the purpose of Labor Law § 196-d. . . . [T]he reasonable patron standard should govern when determining whether a banquet patron would understand a service charge was being collected in lieu of a gratuity.

10 N.Y.3d at 79.

[10] Plaintiffs contend that "[i]t has yet to be established whether it is 'lawful' for the defendant to distribute those monies to non-class members."  Pl. Mem. of Law at 9.  That legal issue, however, appears to be a central part of Defendant's motion to dismiss and, thus, is the precise issue to now be determined.

similar Nevada law, the employer could impose a tip-pooling agreement provided the

employer does not retain any part of the tips for its own use); <u>see also</u> 12 N.Y.C.R.R. §

146-2.14 (noting that the determination of who is eligible to share in the receipt of tips is a

fact-intensive inquiry that depends not on job titles, but on job functions).

Plaintiffs' Third Cause of Action is too narrow because it does not allege that

Defendant retained any portion of the service charges,[11] but that it paid some of those

monies to persons other than Plaintiffs (or persons within their proposed class).  Plaintiffs

concede in their opposition papers that there may be other employees who are entitled to

participate in the receipt of service charges.  Pl. Mem. of Law at 5-6 ("Plaintiffs' pleading is

*limited* in that it does not purpose to seek the recovery of service charges that may be owed

---

[11] Elsewhere in the Amended Complaint Plaintiffs allege that Defendant retained the collected service charges.  The Court does not consider the allegations outside the Third Cause of Action because they were not incorporated therein.  <u>See</u> n. 4 *supra*.

Even if the Court considered paragraph 23 of the Complaint, which is outside of the Third Cause of Action and not incorporated therein, it suffers from similar problems.  That paragraph states that Defendant retained the service charges for its own benefit, but then defines that benefit to "include paying such monies . . . to persons employed by the defendant who were not members of the class or not members of the class providing the services for which such charges were collected. . . ."  It is not unlawful to distribute gratuities to persons outside of Plaintiffs' proposed class provided the recipients are not the employer or officers or agents of the employing corporation.

If the Court were to consider paragraph 13, that might be enough to defeat Defendant's motion to dismiss the § 196-d claim.  That paragraph states that Defendant did "not pay any members of the class any portion of the funds it collected . . . as a 'service/gratuity charge'" and that it kept the monies "for its own profit or benefit."  The force of this sentence, however, is negated by its alternative pleading (and other allegations in the complaint) that: (i) Defendant "failed to pay all such [tips] to the class members. . ."; (ii) Defendant did pay out the service charges, albeit in the form of wages; and (iii) the allegations in the complaint defining the "benefit" to Defendant to mean paying the tips to persons outside of Plaintiff's class.  Plaintiff is granted leave to file a second amended complaint to cure these pleading deficiencies, but should take care to: (1) draft short, simple sentences; (2) ensure the allegations are consistent with this opinion; and (3) ensure that the factual allegations asserted therein do not run afoul of Fed. R. Civ. P. 11(b).

Lastly, while Plaintiffs allege in their memorandum of law that service charges were paid to management personnel, Pl. Mem. of Law at 2-3, those allegations do not appear in the Complaint.

to other employees of the defendant for providing other services.") (emphasis in original).

The mere fact that Defendant may pay a portion of the service charges to persons other than those within Plaintiffs' class is not necessarily unlawful.  Accordingly, Plaintiff's allegations "do not permit the [C]ourt to infer more than the mere possibility of misconduct" and, therefore, are insufficient to state a claim.  Iqbal, 129 S. Ct. at 1950.

The Third Cause of Action also alleges that, with respect to the room attendants, Defendant "never disclosed that a portion of their basic hourly wage was paid from customer service charges collected by the defendant."  Compl. at ¶ 35.  Plaintiffs, therefore, contend that "defendant should, as a matter of law, be deemed to have paid such persons no portion of such service charges whatsoever. . . ." because the room attendants expected to receive gratuities in addition to the represented hourly rate.  Id.[12]  The basis of Plaintiffs' contention is that Defendant did not comply "with the notice and accounting requirements imposed by § 196-d."

These allegations do not allege that Defendant retained any portion of the service charge and, therefore, do not state a claim.  To the contrary, the allegations are that Plaintiffs did receive a portion of the service charges, albeit as part of their wages.  Plaintiffs do not provide any basis in § 196-d or the case law upon which this Court can conclude that the failure to apprise Plaintiffs of the fact that their hourly rate was comprised, in part, of the collected service charges requires the Court to disregard that they did, in fact, receive the service charge monies (albeit as part of their wages).  See 29 C.F.R. § 531.55(a)

---

[12] Plaintiffs' argument is that, because they were not told that part of their hourly wage would be comprised of service charges, it must be concluded that they did not actually receive any portion of the service charges.

(compulsory service charges are not tips and may be distributed to employees to be used to satisfy the monetary requirements of the FLSA); see also Alderman v. 21 Club, Inc., 733 F. Supp.2d 461, 471 (S.D.N.Y. 2010) ("Since federal law counts services charges as wages, they must be included in the employee's total remuneration for purposes of determining his pay rate for overtime purposes.").  Although employers may now have an obligation to give employees "written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate . . . [and that] extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate," no such notice or accounting requirements were in effect prior to January 1, 2011.  See 12 N.Y.C.R.R. § 146-2.2 (effective January 1, 2011).  There is nothing in the plain language of § 196-d that requires employers to provide any particular notice or accounting to employees.  Accordingly, the Third Cause of Action is DISMISSED for failure to state a claim.

### b.    Wrongful Interference with Prospective Economic Advantage

In their Fourth Cause of Action, Plaintiffs assert a claim for the wrongful interference with prospective economic advantage.  The basis for this claim is that: (1) Defendant misrepresented to its customers that the included service charge was in lieu of a voluntary gratuity; (2) by doing so, Defendant discouraged its customers from voluntarily leaving gratuities; and (3) this interfered with the "prospective contractual or other advantageous economic relationship between plaintiffs and the class members and the defendant's customers . . . because it is the industry custom for such customers to tip or pay a gratuity" and for the gratuity "to be retained, in full, by the workers actually performing the dining and guest room services for . . . which such service charge was paid."  Am. Compl. at ¶ 41.  Defendant moves to dismiss this claim on the grounds that: (1) New York law does not

recognize such a claim by an employee against an employer because the customers

belonged to the employer; not the employee; and (2) there are no allegations Defendant

sought to obtain a competitive advantage over Plaintiffs.

Wrongful interference with prospective economic advantage, otherwise known as

tortious interference with prospective economic advantage, has the following elements:

> (1) the plaintiff had business relations with a third party; (2) the defendant interfered
> with those business relations; (3) the defendant acted for a wrongful purpose or
> used dishonest, unfair, or improper means; and (4) the defendant's acts injured the
> relationship.

Catskill Development, L.L.C. v. Park Place Entertainment Corp., 547 F.3d 115, 132 (2d Cir.

2008).

Here, there are insufficient allegations that Plaintiffs had a business relationship

with a third party.  Rather, the business relationship belonged to Defendant.  Tasso v.

Platinum Guild Int'l, No. 94-cv-8288, 1998 WL 841489, at *4 (S.D.N.Y. 1998); Cuminsky v.

James River Corp., 1995 WL 520021, at *4 (E.D.N.Y. 1995) ("[A]n employee generally

cannot state a claim against their employer or others for tortious interference with business

relations *as business relationships with the employer's customer belong to the employer, not*

*the employee*.") (emphasis in original); McEntee v. Van Cleef & Arpels, Inc., 166 A.D.2d 359

(1st Dep't 1990).  Plaintiffs admit in their Amended Complaint that they were Defendant's

employees, Am. Compl. at ¶ 4, and the customers were those of Defendant.  Am. Compl. at

¶ 41.

Further, there are insufficient allegations that any business relationship was injured.

There are no allegations that any of Defendant's customers would not return to the Otesaga

on account of Defendant's actions.  The intention of Defendant's customers was to obtain

- 14 -

overnight accommodations and/or a meal from Defendant.  Defendant's customers obtained

those accommodations or meals notwithstanding Defendant's gratuity policy or whether

Plaintiffs received any gratuities or a certain amount of gratuities.  There are no plausible

allegations that the customers' purpose was frustrated by Defendant's conduct.  There can

be little doubt that the customers expected service from Defendant's employees, including

Plaintiffs, as part of their relationship with Defendant, but there are no plausible allegations

that the customers did not receive those services or that the customers had any intention of

forming any business relationship directly with Defendant's employees (including Plaintiffs).

While Defendant's customers may have intended the mandatory service charges to be paid

to Defendant's employees, see discussion infra at section III(e), the relationship between the

customers and Plaintiffs was incidental to the customers' primary business relationship with

Defendant.  Further, the only harm plausibly alleged by the Amended Complaint is that

Plaintiffs' did not receive all the tips to which they claim to be entitled.  There are no plausible

allegations that any business relationships were damaged on account of Defendant's

conduct.  Accordingly, this claim must be DISMISSED.

### c.   Conversion

In their Fifth Cause of Action, Plaintiffs assert a claim of conversion.  Plaintiffs

allege that Defendant was a bailee of the service charge funds it collected and that

Defendant failed to fully distribute those funds to Plaintiffs "and the other class members

actually providing the services. . . ."  Am. Compl. at ¶ 51.  Defendant moves to dismiss this

claim on the ground that Plaintiffs have failed to allege that they had title to any specific

funds, that specifically identifiable funds were converted, or that Defendant exercised

dominion or control over these funds.

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403 (2d Cir. 2006) (quoting Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342 (1995)).  Conversion requires a "denial or violation of the plaintiff's dominion, rights, or possession. . . ." Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 487 (1983).  "A conversion implies a wrongful act, a misdelivery, a wrongful disposition, or withholding of the property." Magnin v. Dinsmore, 70 N.Y. 410, 417 (1877).  "To establish a cause of action in conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question. . . .  Tangible property or *specific money* must be involved." Independence Discount Corp. v. Bressner, 47 A.D.2d 756, 757 (2d Dep't 1975) (emphasis in original); see also Jacob v. Kimberly-Clark Corp., 2006 WL 1582149, at *9 (E.D.N.Y. 2006); Fiorenti v. Central Emergency Phys., PLLC, 305 A.D.2d 453, 455 (2d Dep't 2003); Laurent v. Williamsburgh Savings Bank, 28 Misc.2d 140 (1954).  "Although money may be the subject of an action for conversion. . ., the money sued upon must have been the property of or belonged to the plaintiff and a mere claim of monies paid out by mistake based upon a contract will not support an action for conversion." Marine Midland Bank v. John E. Russo Produce Co., 65 A.D.2d 950, 410 N.Y.S.2d 730, 733 (4th Dep't 1978).  "[M]oney can be the subject of conversion and a conversion action only when it can be described, identified, or segregated in the manner that a specific chattel can be, and the mere failure to pay a debt is not a conversion of the money owing." G.D. Searle & Co. v. Mediocore Communications, Inc., 843 F. Supp. 895, 912 (S.D.N.Y. 1994); see also Columbia Marine Servs., Inc. v. Reffet

Ltd., 861 F.2d 18, 23 (2d Cir. 1988) ("a mere claim that a sum of money, not specifically identifiable, has been paid out of general funds by an alleged debtor to a third party, will not support an action against the third party for conversion.").

Here, there can be no conversion claim because Plaintiffs never had title, possession, or control of the gratuities. See Fiorenti, 305 A.D.2d at 455 (dismissing conversion claim where plaintiffs sought to obtain bonuses wrongfully withheld). The monies at issue here were service charges collected directly from the patrons of Defendant's hotel and/or restaurant and then paid out to various of Defendant's employees. There is no plausible allegation that Defendant was obligated to remit specific, identifiable funds to Plaintiffs or to maintain the service charges in a separate account. Even if there was such an allegation, as previously discussed, tip pooling is permissible and the law did not impose any such obligations on Defendant. Defendant was entitled to distribute the service charges as it saw fit, provided it did not run afoul of § 196-d or any other legal restrictions. While Plaintiffs may have had an equitable right to some of the monies, "a conversion action cannot be predicated on an equitable interest or a mere breach of contractual obligation." Traffix, Inc. v. Herold, 269 F. Supp.2d 223, 228 (S.D.N.Y. 2003).

The case of Edwards v. Prime, Inc., 602 F.3d 1276 (11th Cir. 2010), addressed a factually similar situation under the laws of Alabama. There, similar to here, it was claimed that:

> Because [the employer] paid the plaintiffs as "tipped employees," it claimed a "tip credit" and paid them an hourly wage below the minimum wage that otherwise would have applied. As a standard practice [the employer] withheld a percentage of servers' tips, and a portion of that money was paid to "the house." The rest was placed into a "tip pool," which [the employer] used to pay other employees, including some who were not eligible to participate in the tip pool.

602 F.3d at 1285.  As here, the defendant in that case argued that there could be no conversion because "there is no allegation the defendants took specific money that could be identified."  Id. at 1304.  In dismissing the claim, the Eleventh Circuit noted that:

> Employees care about the amount of their wages, not whether they receive particular coins or bills, or money in a bag or chest, or payment into a special account. . . . The amended complaint alleges that the defendants converted identifiable amounts of money.  Identifiable amounts of money are one thing, specific money capable of identification is another. . . . The plaintiffs want their tips returned but it would be implausible to suggest, and they have not alleged, that [the employer] has those particular tips stored in a bag somewhere, much less segregated in a fashion that would permit matching them up to each individual plaintiff.

Id. at 1304-05.  The same reasoning applies here.  Because there was no specifically defined money, there could be no claim of conversion.  Accordingly, Plaintiffs' conversion claim must be DISMISSED.

### d.  **Negligence**

In their sixth cause of action, Plaintiffs assert a claim of negligence.  Plaintiffs allege that Defendant represented to its customers that it would collect the service charges and distribute them exclusively to Plaintiffs and the other proposed class members and thereby assumed a duty to exercise reasonable care to distribute the monies only to Plaintiffs and the other proposed class members.  Defendant is alleged to have breached this duty of care by failing to properly pay the service charges.  Defendant moves to dismiss on the ground that Plaintiffs fail to allege a duty of care.  Plaintiffs respond that they adequately state a claim for negligence because Defendant was a bailee of Plaintiffs' property (the service charges) and, therefore, had a duty to act as agent and bailee of the monies.

In a bailment, title to the property remains in the bailor while possession is transferred to the bailee.  S.E.C. v. Credit Bancorp, Ltd., 2000 WL 1752979, at *26 (S.D.N.Y.

- 18 -

2000); Cornelius v. Berinstein, 183 Misc. 685 (N.Y. Sup. Ct. 1944).  Here, Defendant's customers relinquished to Defendant both ownership and possession of the money when they delivered it to Defendant.  Even assuming Defendant's customers may have expected the money to go to Defendant's employees, the customers neither expected to get that money back nor expected an accounting of that money.  Thus, no bailment situation was created.  See Austin v. Colonial Williamsburgh Hotel Properties, Inc., 1996 WL 406671, at *6 (E.D. Va. 1996) ("Plaintiffs have not established any common law right to a tip; neither has any party cited any authority that a waiter . . . or any other server possesses a property right in a voluntarily paid gratuity.").  In short, aside from the obligations set forth in the FLSA or § 196-d, Defendant owed no duty of care to Plaintiffs to deliver the service charge monies to them.  Further, this claim is duplicative of the breach of contract claim discussed *infra* because it does not allege the violation of a duty independent from the contract between Defendant and its customers.  See Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987).

      **e.**    **Breach of Contract**

Plaintiffs' Seventh Cause of Action alleges breach of contract.  In this regard, Plaintiffs contend that they were intended beneficiaries of the contracts between Defendant and its customers.  Defendant moves to dismiss this claim on the grounds that: (1) it is not clear from the face of the contract that Plaintiffs were intended beneficiaries; and (2) Plaintiffs are incidental, rather than intended, beneficiaries.

"Under New York law, a contractual promise can be enforced by a non-party who is an intended third-party beneficiary of that promise."  Consolidated Edison, Inc. v. Northeast Utilities, 426 F.3d 524, 527 (2d Cir. 2005).  "A non-party is an intended third-party beneficiary

if ( inter alia ) 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties.'" Consolidated Edison, 426 F.3d at 527 (quoting Restatement (Second) of Contracts § 302 (1981). "Parties asserting third-party beneficiary rights under a contract must establish the existence of a valid and binding contract between other parties, that the contract was intended for their benefit and that the benefit to them is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost." Mendel v. Henry Phipps Plaza West, Inc., 6 N.Y.3d 783, 784 (2006); see Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011). For third party beneficiary status to be established, "no one other than the third party can recover if the promisor breaches the contract . . . or . . . the language of the contract [must] otherwise clearly evidence[] an intent to permit enforcement by the third party." Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 66 N.Y.2d 38, 45 (1985).

The Amended Complaint alleges that, in entering into agreements with customers, Defendant "made a promise . . . that such service charges paid by such customers were intended for the benefit of the plaintiffs . . . and . . . that no part of such service charges were to be retained by defendant for its own profit or for the benefit of other employees. . . ." Am. Compl. at ¶ 60. It is further claimed that Defendant failed to advise its customers that, in fact, it would be keeping a portion of the charges for itself or for other employees and that Defendant's customers relied on Defendant's promise, thereby breaching that promise.

These allegations are sufficient to withstand Defendant's motion to dismiss. The Amended Complaint pleads the existence of a valid contract between Defendant and its customers and that the contract contained a provision that Defendant promised to pay the

collected service charges to Plaintiffs only, but did not do so.  It may turn out that, as

Defendant alleges, that there is no such agreement on the face of the contract between

Defendant and its customers and/or that allowing Plaintiffs to enforce any provisions

concerning the payment or distribution of service charges would not effectuate the intention

of the contracting parties and, therefore, Plaintiffs are merely incidental beneficiaries.  On a

motion to dismiss, however, these allegations plausibly state a claim for breach of contract  -

that Defendant collected service charges pursuant to an agreement between Defendant and

its customers that those service charges would be paid to Plaintiffs.

### f.   **Punitive Damages**

Lastly, Defendant moves to dismiss the claim for punitive damages.  Plaintiffs seek

punitive damages in connection with their conversion and tortious interference with

prospective econommic advantage claims.  Having dismissed those claims, the claim for

punitive damages also must be DISMISSED.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED IN PART and

DENIED IN PART.  Defendant's motion is granted insofar as Plaintiff's claims for a violation

of N.Y. Labor Law § 196-d, tortious interference with prospective economic advantage,

conversion, negligence, and punitive damages are DISMISSED.  In all other respects,

Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated:April 14, 2011

Thomas J. McAvoy
Senior, U.S. District Judge

21